IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

CLAUDIA FORD,

        Plaintiff,      Case No. 3:11 CV 1053

  -vs-

                  MEMORANDUM OPINION

E.J. LEIZERMAN & ASSOCIATES, LLC,
et al.,

        Defendant.

KATZ, J.

  This matter involves Plaintiff Claudia Ford's claims for gender discrimination, age discrimination and retaliation against her former employers, E.J. Leizerman & Associates LLC, E.J. Leizerman and Michael Leizerman. The matter is currently before the Court on Defendants' motion for summary judgment. For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I.  Background**

  E.J. Leizerman & Associates is a Toledo, Ohio law firm that primarily represents vehicle and trucking accident plaintiffs, as well as injured railroad workers whose injuries fall under the Federal Employers Liability Act ("FELA"). E.J. Leizerman and Michael Leizerman are the only partners in the firm. At all times relevant Michael Leizerman was the managing partner responsible for personnel decisions.

  Plaintiff was initially hired as a law clerk in the fall of 2000 at the age of forty-eight. After passing the Ohio bar examination, Plaintiff was hired as a full time associate on December 11, 2000. Defendants claim Plaintiff was hired primarily as a research and writing attorney, though Plaintiff claims she was assured in interviews that she could take cases to trial.

In the early days of her employment, Plaintiff worked with E.J. on FELA cases. Additionally, a then recently issued Ohio Supreme Court decision, *Scott Pontzer v. Liberty Mutual Ins. Co.*, 710 N.E.2d 1116 (Ohio June 23, 1999), created a large volume of new work for Defendants. These *Scott-Pontzer* cases were divided between Plaintiff and another associate, Ron Leonhardt.

Sometime in 2003, Michael, as managing partner, began reviewing the firm's overhead expenses. Michael's concern regarding expenses was heightened because of rumors that *Scott-Pontzer* would be overruled, an event which would significantly reduce the firm's business. *Scott-Pontzer* was in fact overruled in November 2003. *See Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256 (Ohio 2003) (*overruling Scott-Pontzer*). For various reasons, however, Michael did not act to downsize the firm until a later time.

Sometime in 2004, E.J. and Michael decided to hire Brian Reddy, an experienced FELA trial attorney, to support the firm's FELA practice. Additionally, in May 2004, the firm hired Ryan Gembala, then a law student, as a law clerk.

On August 12, 2005, the firm underwent a work force reduction and terminated four employees, an action stemming from Michael's earlier concerns about firm expenses and the Ohio Supreme Court's decision to overturn *Scott-Pontzer*. In addition to terminating Plaintiff, the firm terminated Scott Woollard (22 year-old white male), Gina Heckel (39 year-old Hispanic female), and Will Cummins (fifty-three year old white male).

Also in August 2005, near the time of the work force reduction, Ryan Gembala returned to the firm as a law clerk. Gembala was then hired as full time associate after passing the Ohio bar examination in October 2005.

Throughout her time at the firm, Plaintiff claims she Defendants subjected to gender and age discrimination. Plaintiff claims she was prohibited from working on certain types of cases and from attending business development events because of her gender and age. Plaintiff also claims she made numerous complaints, in her capacity as the firm's sexual harassment compliance officer, that other female workers were discriminated against. Defendants deny Plaintiff's claims of discrimination and contend Plaintiff was a poor worker who squandered multiple opportunities to develop business and to take cases to trial.

Plaintiff brought the instant action on May 23, 2011, alleging retaliation under federal law and Ohio law, gender discrimination under federal law and Ohio law, and age discrimination under federal law only. Defendants now move for summary judgment as to all of Plaintiff's claims, and for judgment on the pleadings as to Plaintiff's age discrimination claim.[1]

**II. Standards of Review**

**A. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

[1] Defendants' motion claims that the gravamen of Plaintiff's gender discrimination claims involve a failure to promote claim. As such, Defendants purport to move for summary judgment against a failure to promote claim. The Court, however, will not address a failure to promote claim. Plaintiff's complaint does not contain any such allegations, and Plaintiff's briefs do not respond to Defendants' failure to promote arguments.

any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2541, 91 L. Ed. 2d 202 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'"

*Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**B. Judgment on the Pleadings**

The Court construes Defendants' motion to dismiss Plaintiff's age discrimination claim as a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings.

A motion for judgment on the pleadings is analyzed under the same standard as a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir.2008). To defeat such a motion, the complaint must state sufficient facts, accepted as true, to state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding the motion, the Court must accept as true all of the non-movant's factual allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2013). The complaint "need not contain 'detailed' factual allegations, [but] its 'factual allegations must be enough to raise a right to relief above the speculative level . . . .'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Conclusory allegations and legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555

(holding that a complaint must contain more than "a formulaic recitation of the elements of the cause of action"). X

### III. Discussion

### A. Gender Discrimination

Defendants move for summary judgment as to Plaintiff's Title VII gender discrimination claim.

Plaintiff may establish gender discrimination by introducing direct evidence of thereof. Alternatively, Plaintiff may establish a circumstantial case of gender discrimination by means of the familiar *McDonell Douglas* burden shifting analysis. In the instant matter, Plaintiff claims there is both direct and circumstantial evidence of discrimination. The Court will examine each alternative in turn.

### 1. Direct Evidence

"Direct evidence is that which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "[D]irect evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice . . . ." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Only explicitly expressed unlawful motivation can constitute direct evidence of discrimination. *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).

Plaintiff points to three alleged statements—two by E.J. and one by Michael—that purportedly establish direct evidence of discrimination: (1) E.J. allegedly said that Plaintiff could

6

not sit at the counsel table during a trial because Plaintiff would make the third woman at the table; (2) E.J. told Bruce Stone, an investigator at the firm, that he would not allow Plaintiff to attend certain railroad-related parties, outings and union events because women cannot make it in the FELA field; (3) Michael said of the termination of a female employee who worked upstairs in the "hen house," that having too many hens together is a problem.

None of these statements are direct evidence that Plaintiff's termination was motivated by gender discrimination. First, E.J.'s statement prohibiting three women at the counsel table has nothing to do with Plaintiff's termination. To conclude the statement was related to Plaintiff's termination requires an inference, which bars its use as direct evidence. *See Jacklyn*, 176 F.3d at 926 (direct evidence does not require any inferences to conclude that termination was motivated by discrimination); *compare Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 577 n.7 (6th Cir. 2000) (finding direct evidence of discrimination-based hiring decision where university president allegedly said "[w]e already have two black vice presidents. I can't bring in a black provost.").[2] Similarly, E.J.'s assertion that women are unable to make it in the FELA field was an explanation as to why Plaintiff was prohibited from attending parties and union events, not as to why she was terminated. Finally, though Michael's statement that having too many "hens" together referred to the termination of a female employee, it did not refer to the termination of Plaintiff. The

---

[2] Notably, the only allegation that E.J. said Plaintiff was prohibited from sitting at the counsel table occurs at paragraph 19 of Plaintiff's complaint. While allegations in the complaint normally do not constitute evidence, Defendants' answer specifically admits to the allegations contained in paragraph 19 of Plaintiff's complaint. As such, the Court will consider those allegations as part of the record. *See Brown v. Tenn. Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980) (citing *Morelock v. N.C.R. Corp.*, 586 F.2d 1096, 1107 (6th Cir. 1978) ("[A]dmissions in the pleadings are generally binding on the parties and the Court.").

7

statement's applicability to Plaintiff's termination requires an inference and is therefore not direct evidence. *Id*.

**2. Circumstantial Evidence**

To maintain a circumstantial claim of discrimination Plaintiff must first establish a prima facie case. If she does, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. The burden then shifts back to Plaintiff to demonstrate that the non-discriminatory reason was actually a pretext. *See Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (outlining burden-shifting analysis governing circumstantial cases of discrimination).

To establish a prima facie case of discrimination, Plaintiff must show (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class. *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009). Importantly, where a termination results from a work force reduction, the fourth element is modified to require that Plaintiff show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). Defendants concede the first and second prongs, but dispute the third and fourth.

As to the third prong, Defendants argue Plaintiff was unqualified for the position because she did not meet Defendants' legitimate expectations when performing her duties. Plaintiff correctly points out, however, that "the standard for determining whether an employee is qualified for a position is whether the plaintiff 'present[s] credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant

8

field.'" *Gaglioti v. Levin Group, Inc.*, No. 11-3744, 508 F. App'x 476, at *480 (6th Cir. 2012) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (*en banc*)). Any analysis regarding Plaintiff's job performance properly occurs with Defendants' rebuttal of the prima facie case. *Gaglioti*, 508 F. App'x, at *483 (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660-61 (6th Cir. 2000)). To consider Plaintiff's job performance when determining her qualifications at the prima facie stage "impermissibly conflates the non-discriminatory reasons for termination with the qualifications for the job." *Gaglioti*, 508 F. App'x, at *483 (citing *Cline*, 206 F.3d at 660-61 (6th Cir. 2000)); *accord Speck v. Agrex, Inc.*, 888 F. Supp. 2d 867, 878 (N.D. Ohio 2012) ("[Plaintiff's poor performance] might mean [he] was bad at his job, but it does not make him unqualified."). In the instant matter, Plaintiff was a licensed attorney who met the minimum basic qualifications for the job, and Plaintiff therefore satisfies the third prong of the prima facie case.

As to the fourth prong, the threshold question is whether Plaintiff's termination occurred in the context of a work force reduction. *Geiger*, 579 F.3d at 623 (non-work force reduction requires showing that Plaintiff was replaced, whereas work force reduction requires showing of additional evidence Plaintiff was singled out for discriminatory discharge). When making this determination, the Sixth Circuit has explained that:

> [a] work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.[10]

9

> [10]Of course, an employer could not avoid liability by changing the job title or by making minor changes to a job indicative of an attempt to avoid liability. Further, a plaintiff could attempt to show that the force reduction was itself pretextual."

*Barnes*, 896 F.2d at 1465, 1465 n.10 (citation omitted).

Defendants claim Plaintiff was terminated as part of a work force reduction. Michael Leizerman testified he wanted a leaner firm and had been thinking for some time about how to reduce overhead. When the work force reduction actually occurred in August 2005, Michael testified Plaintiff was selected both because of performance deficiencies, and because a significant source of her work was eliminated when the Ohio Supreme Court overturned its *Scott-Pontzer* decision in 2003..

Despite Defendants' arguments, the Court finds there is a factual dispute as to whether Plaintiff was terminated as part of a work force reduction. First, there is a dispute as to whether Plaintiff was replaced by a younger male, Ryan Gembala. *See Barnes*, 896 F.2d at 1465 ("An employee is not eliminated as part of a work force reduction when he or she is replaced . . . ."). Gembala was initially hired by Defendants in May 2004, working as a law clerk while still attending law school. Gembala returned to work as a law clerk in August 2005, the same week Plaintiff was terminated. Then, in October 2005, around the same time he passed the Ohio bar exam, Gembala was hired full time. There is some confusion about what Gembala was hired to do when. Defendants note that as a law clerk, Gembala did legal work for all of the firm's attorneys. (Defs.' Mo. at 5). When Gembala was hired full time after passing the bar exam, Defendants say he was hired "as Office Manager and Attorney." (Defs.' Mo., Doc. 60 at 5). Defendants then state, however, that Michael Leizerman never contemplated Gembala in a dual Office Manager / Attorney role upon his full-time start. Rather, Gembala only began taking on legal work because

10

he had extra time aside form his office manager duties and therefore asked for legal work. (*Id.* at 6).³ In any event, Plaintiff claims that within a year, Gembala had appeared in most of the FELA cases on which she had been working. Moreover, Plaintiff introduced evidence that many of the duties placed on Gembala as office manager were actually completed by other employees at the firm, though Defendants maintain that no one else ever did the office manager job while Gembala was employed. Given this, there is a factual dispute as to whether Gembala was hired to replace Plaintiff. In sum, a jury may well accept Defendants' argument that Gembala was hired as an office manager and that he simply took on Plaintiff's duties in addition to his own. *See Barnes*, 896 F.2d at 1465 ("[a] person is not replaced when another employee is assigned to perform the palintiff's duties in addition to other duties."). A jury may also find, however, that Plaintiff was hired to replace Plaintiff.

There is also a dispute about whether Plaintiff was terminated as part of a work force reduction because Plaintiff has introduced evidence suggesting the work force reduction was pretextual. *See Barnes*, 896 F.2d at 1465 n.10 (when determining whether a work force reduction occurred, a plaintiff may "attempt to show that the force reduction was itself pretextual."). Julie Bruening, an administrative worker, submitted an affidavit stating:

> 6. I witnessed and participated in discussions in which EJ and/or Michael expressed ongoing concerns over the stated justification for termination of Plaintiff.
>
> 7. Downsizing was the justification that they decided upon and the explanation the partners agreed would be offered to [Plaintiff].
>
> 8. I also have had countless opportunities to observe both EJ and Michael Leizerman as they relate to females at the office and elsewhere and from those observations,

---

³ (*See also* Defs.' Reply, Doc. 73 at 11) (it is "[Defendants'] contention that Gembala was brought back to the Firm as the Office Manager but, as time went on, [he] acceded to more legal work.").

> coupled with their discussion of [Plaintiff] in particular, I have formed the opinion that they disliked her because she is not a subservient female."

(Bruening Aff., Doc. 68-1).

Turning to an application of the fourth element, if a jury determines a work force reduction did not occur, Plaintiff has satisfied the fourth element because, as described above, a jury could find she was replaced. Conversely, if a jury determines a work force reduction did occur, Plaintiff has satisfied the fourth element because she has proffered additional evidence from which a jury could find Plaintiff was singled out for impermissible reasons; namely, Defendants' comments regarding Plaintiff's inability to sit at the counsel table and to attend business development events because of her gender, as well as Defendants' gender-related comments made in reference to the prior termination of a female. *See Barnes*, 896 F.2d at 1466 ("additional evidence requirement" may be satisfied by showing "the employer made statements indicative of a discriminatory motive . . . .").

The Court's analysis of Plaintiff's prima facie case is not altered by "the same-actor" inference, "which allows one to infer a lack of discrimination from the fact that the same individual both hired and fired the employee." *Buhrmaster v. Overnite Transportation Co.*, 61 F.3d 461 (6th Cir. 1995). Defendants urge the Court to apply the same-actor inference in this case because Michael Leizerman both hired and fired Plaintiff. The Sixth Circuit, however, has "reject[ed] the idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573 (6th Cir. 2003) (*en banc*). Further, even where "the factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact."

12

*Id.* Accordingly, because Plaintiff has raised genuine factual disputes as to her prima facie case, the Court will not grant summary judgment on the same-actor inference.

As Plaintiff has established a prima facie case of gender discrimination, the burden shifts to Defendants to articulate a legitimate, non-discriminatory reason for Plaintiff's termination. *See Johnson*, 319 F.3d at 866 (outlining burden-shifting analysis). Defendants have done so by alleging a work force reduction. Defendants also offer extensive argument claiming Plaintiff did not meet Defendants' expectations and squandered opportunities to develop business and to bring cases to trial. Defendants have therefore shifted the burden back to Plaintiff to demonstrate the reason for termination was pretextual. *Id.* As described above, the affidavit of Julie Bruening constitutes evidence that the work force reduction and performance appraisals were pretextual. Further, Defendants' above-described gender-related statements are evidence from which a jury could find pretext.

In summary, Plaintiff has proffered sufficient evidence to satisfy the *McDonnell-Douglas* burden shifting analysis, thereby defeating Defendants' motion for summary judgment as to gender discrimination.

**B. Age Discrimination**

Defendants move to dismiss Plaintiff's age discrimination claim for failure to state a claim, a motion which this Court construes as a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings. Alternatively, Defendants seek summary judgment.[4]

---

[4]

Initially, Defendants' briefs expressly limited their age discrimination arguments to a motion for judgment on the pleadings, reserving any summary judgment analysis for a later date. Defendants' reply brief, however, offered summary judgment arguments in case this Court rejected their motion for judgment on the pleadings. Plaintiff responded to these arguments via

(continued...)

As to judgment on the pleadings, Defendants argue Plaintiff's complaint fails to allege an age discrimination claim because it erroneously invokes Title VII rather than the Age Discrimination in Employment Act ("ADEA"). Defendants are correct that Plaintiff's claim properly derives from the ADEA rather Title VII. Yet, the Sixth Circuit has made clear that Fed. R. Civ. P. 8's liberal "notice pleading standard" is not dependent on labels, and is not violated by mis-labeling so long as Defendant had fair notice of Plaintiff's claims. *See Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (quoting *United States v. Louisville & Nashville R.R. Co.*, 221 F.2d 698, 701 (6th Cir. 1995)) ("[The Sixth Circuit] has made clear that "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states."); *see also United States ex rel. Tillson v. Lockheed Martin Energy Sys., Inc.*, Nos. 5:00CV-39-M, 5:99CV-170-M, 2004 U.S. Dist. LEXIS 22246, at *42-*43 (W.D. Ky. Sept. 29, 2004) (complaint's erroneous invocation of Federal Whistleblower Protection Act did not bar proper assertion of claim under False Claims Act where complaint otherwise met Rule 8's notice pleading requirements). In the instant matter, Defendants had notice of Plaintiff's age discrimination claim, so much so that their motion for judgment on the pleadings laid-out for the Court the law as it should have been pled by Plaintiff. Defendant's motion for judgment on the pleadings is therefore denied.

As to summary judgment, the same burden shifting analysis applies to Plaintiff's age discrimination claim as applied to her gender discrimination claim. *See Johnson* 319 F.3d at 866 (outlining burden-shifting analysis). Moreover, Plaintiff must establish the same prima facie case

---

[4](...continued)
her surreply brief, and the Court will therefore consider summary judgment.

by showing: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside of the protected class. *See Geiger*, 579 F.3d at 622 (outlining prima facie case). Again, the fourth element is modified where a termination results from a work force reduction. In that case, Plaintiff must show "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes*, 896 F.2d at 1465. Defendants contest the third and fourth prongs.

Plaintiff satisfies the third prong and shows she is qualified for the same reasons outlined in the Court's gender discrimination analysis.

As to the fourth prong, there remains a factual dispute as to whether Plaintiff was terminated as part of a work force reduction. If there was no reduction in force, there is a factual dispute whether Plaintiff was replaced by Gembala. If there was a work force reduction, Plaintiff has proffered evidence that she had superior qualifications—i.e., five years' experience in FELA and other matters—than did Gambela, a recent law school graduate who was not terminated. *See Schoonmaker v. Spartan Graphics Leasing*, 595 F.3d 261, 267 (6th Cir. 2010) (plaintiff may establish prima facie case in work force reduction situation by showing her qualifications were superior to that of a younger coworker).

Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's termination by alleging they underwent a work force reduction. Plaintiff nevertheless defeats summary judgment because she has proffered evidence of pretext, namely, retention of a younger employee who arguably had inferior qualifications.

**C. Retaliation**

To establish a prima facie case of retaliation under Title VII, Plaintiff must show that (1) she engaged in a protected activity; (2) the employer knew of the exercise of the protected activity; (3) Plaintiff suffered an adverse employment action; and (4) a causal link existed between the protected activity and the adverse employment action. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 345 (6th Cir. 2008) (citing *Morris v. Oldham City Fiscal Court.*, 201 F.3d 784, 792 (6th Cir. 2000)). Defendants contest the first and fourth prongs.

Plaintiff satisfies the first prong. To demonstrate a protected activity under the first prong, Plaintiff may show either that she participated in a Title VII proceeding or that she opposed activities that violate Title VII. *E.E.O.C. v. Romeo Cmty. Schs.*, 976 F.2d 985, 989 (6th Cir. 1992). In the instant matter, Plaintiff, in her capacity as Defendants' sexual harassment compliance officer, relayed complaints of other female employees to E.J. and Michael. Plaintiff also complained that she, herself, was being treated differently and was being denied certain work opportunities because of her gender. Defendants argue that Plaintiff's complaints were not a protected activity because they were informal. The record reflects, however, that Plaintiff specifically complained of gender discrimination and that she asserted that it was illegal. Such complaints are sufficient to demonstrate a protected activity under the first prong. *See id*. at 989-90 (plaintiff employee demonstrated protected activity where she informally complained that she was being discriminated against and where she stated her belief that such discrimination broke some sort of law).

Plaintiff's retaliation claim nevertheless fails because she cannot establish a causal connection between the protected activity and her termination. First, Defendants correctly point out the absence of any evidence to demonstrate temporal proximity between Plaintiff's protected

16

conduct and her termination. *See Mickey v. Zeidlr Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (temporal proximity coupled with other evidence sufficient to establish causal connection). As to Plaintiff's relaying of other employees' complaints, these complaints occurred "sometime in 2004."[5] Plaintiff's termination did not occur until August 2005. This time gap—ambiguity as to the specific duration notwithstanding—is insufficient to establish a causal connection. *See Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007) ("This Court typically has found the causal connection element satisfies only where the adverse employment action occurred within a matter of months, or less, of the protected activity."); *see also Gambill v. Duke Energy Corp.*, No. 10-3333, 456 F. App'x 578, at *588-*589 (6th Cir. 2012) (surveying courts' assessments of different temporal periods). As to Plaintiff's complaints about her own treatment, the only evidence cited that bears on temporal proximity is Plaintiff's affidavit, which states "[a]t various times I complained to both Micael and to EJ that . . . my work assignments were different than the male attorneys because of my gender." (Plf's. Aff., Doc. 68-3 at ¶ 38). Again, Plaintiff offers only an open-ended statement as to temporal proximity that is insufficient to support a causal connection. *See Matsushita*, 475 U.S. at 586 (insufficient to "simply show that there is some metaphysical doubt as to the material facts.").

In addition to failing to establish a causal connection with temporal evidence, Plaintiff fails to proffer other evidence of a causal connection. *See Mickey*, 516 F.3d at 525 (temporal proximity coupled with other evidence sufficient to establish causal connection). The only other evidence

---

[5] Plaintiff does not dispute Defendants' assertion that the facts only demonstrate these complaints occurred "sometime" in 2004. (*See* Defs.' Mo., Doc. 60 at 30) ("Plaintiff herself alleges that these women complained to her sometime in 2004 and that she then repeated their complaint."). As such, the Court construes this as undisputed. *See* Fed. R. Civ. P. 56(e)(2) (Court may considered fact undisputed where one party fails to address another party's assertion of fact).

offered by Plaintiff is a passing reference to the affidavit of Julie Bruening, an administrative office worker. Bruening's affidavit states:

> 6. I witnessed and participated in discussions in which EJ and/or Michael expressed ongoing concerns over the stated justification for termination of Claudia Ford.
>
> 7. Downsizing was the justification that they decided upon and the explanation the partners agreed would be offered to Ford.
>
> 8. I also have had countless opportunities to observe both EJ and Michael Leizerman as they relate to females at the office and elsewhere and from those observations, coupled with their discussion of Claudia in particular, I have formed the opinion that they disliked her because she is not a subservient female."

(Bruening Aff., Doc. 68-1 at ¶ 8). Though Bruening makes a generalized connection between Plaintiff's allegedly pretextual termination and her "lack of female subservience," Bruening does not connect Plaintiff's termination with her protected activity. Even if the Court were to infer this connection—an inference not argued by Plaintiff—there is still an absence of temporal evidence tying the termination to the protected activity. Thus, Plaintiff is unable to establish a causal connection and the Court will enter summary judgment as to her retaliation claim.

**IV. Conclusion**

For the reasons stated herein, Defendants' motion for summary judgment is granted in part and denied in part. (Doc. 60). The motion is granted as to Plaintiff's retaliation claims (Counts II and V), and is denied as to Plaintiff's gender and age discrimination claims (Counts I, III, and IV).

IT IS SO ORDERED.

    S/ *David A. Katz*
    DAVID A. KATZ
    U. S. DISTRICT JUDGE